UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LORENZO THURMAN, JR.,

                        Plaintiff,

v.

                        Case # 17-CV-474-FPG

                        DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

## INTRODUCTION

Plaintiff Lorenzo Thurman brings this action pursuant to the Social Security Act seeking review of the final decision of the Acting Commissioner of Social Security that denied his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 13, 14. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

## BACKGROUND

On April 6, 2012, Thurman protectively applied for DIB and SSI with the Social Security Administration ("SSA"). Tr.[1] 117-25. He alleged disability since November 21, 2009 due to back and neck problems. Tr. 157. On July 3, 2013, Thurman appeared and testified at a hearing before Administrative Law Judge David S. Lewandowski. Tr. 26-61. On October 10, 2013, ALJ

---

[1] "Tr." refers to the administrative record in this matter.

1

Lewandowski issued a decision finding that Thurman was not disabled within the meaning of the Act. Tr. 11-25. On March 9, 2015, the Appeals Council denied Thurman's request for review. Tr. 1-4. Thurman appealed to this Court and, on December 29, 2015, his case was remanded by Stipulation and Order for further administrative proceedings. Tr. 378-83; *see Thurman v. Colvin*, 15-CV-411-FPG, ECF Nos. 9, 10. Accordingly, on February 24, 2016, the Appeals Council vacated the hearing decision and remanded the case. Tr. 371-76.

On September 26, 2016, Thurman and a vocational expert ("VE") appeared and testified at a hearing before Administrative Law Judge Sharon Seeley ("the ALJ"). Tr. 330-70. On March 30, 2017, the ALJ issued an unfavorable decision. Tr. 314-25. This became the Commissioner's final decision because the Appeals Council did not assume jurisdiction of the case. *See* 20 C.F.R. §§ 404.984(a), 416.1484(a) (in cases remanded from district court for further proceedings, the ALJ's decision becomes the Commissioner's final decision unless the Appeals Council assumes jurisdiction). Thereafter, Thurman commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

**I.     District Court Review**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)

(quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not de novo and that the Secretary's findings are conclusive if supported by substantial evidence).

## II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(4)(c). If the claimant does not have a severe impairment or combination of impairments that is severe, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. 20 C.F.R. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ's decision analyzed Thurman's claim for benefits under the process described above. At step one, the ALJ found that Thurman had not engaged in substantial gainful activity since the alleged onset date. Tr. 317. At step two, the ALJ found that Thurman has degenerative disc disease of the cervical and lumbar spine, which constitutes a severe impairment. *Id.* At step three, the ALJ found that this impairment did not meet or medically equal any Listings impairment. Tr. 317-18.

Next, the ALJ determined that Thurman retains the RFC to perform light work[2] with additional limitations. Tr. 318-23. Specifically, the ALJ found that Thurman can lift and carry 20

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

pounds occasionally and 10 pounds frequently; can stand and walk for six hours in an eight-hour workday but needs to sit for five minutes after 30 minutes; can sit for six hours in an eight-hour workday but needs to stand for five minutes after one hour; can occasionally stoop, kneel, crouch, crawl, and twist at the waist; cannot reach overhead with his bilateral upper extremities; and can occasionally rotate his head/neck in all directions, but cannot make rapid or repetitive neck motions. Tr. 318.

At step four, the ALJ found that this RFC prevents Thurman from performing his past relevant work. Tr. 323. At step five, the ALJ relied on the VE's testimony and found that Thurman can adjust to other work that exists in significant numbers in the national economy given his RFC, age, education, and work experience. Tr. 323-25. Specifically, the VE testified that Thurman could work as a packager/sorter, mail sorter, laundry sorter, document preparer, inspector, and security monitor. Tr. 324-25. Accordingly, the ALJ concluded that Thurman was not disabled under the Act. Tr. 325.

## II. Analysis

Thurman argues that remand is required because the ALJ violated the Appeals Council's remand order when she did not subpoena records from chiropractor Christopher Conshafter, which in turn violated her duty to develop the record.[3] ECF No. 13-1 at 10-14; ECF No. 15 at 1. For the reasons that follow, the Court finds that the ALJ should have subpoenaed Dr. Conshafter's records.

### A. Record Evidence from Dr. Conshafter

Before the case was remanded, the record contained several "excuse slips" from Dr. Conshafter indicating that Thurman could not work from March 8 to July 28, 2010 due to injuries

---

[3] Thurman advances another argument that he believes requires reversal of the Commissioner's decision. ECF No. 13-1 at 14-17; ECF No. 15 at 2. The Court will not reach that argument, however, because it disposes of this matter based on the ALJ's failure to subpoena Dr. Conshafter's records.

5

related to his car accident. Tr. 294-98. On August 25, 2010, Dr. Conshafter released Thurman to work, but indicated that he could not lift more than 20 pounds, sit, walk, or bend for extended periods, or perform over-the-shoulder arm movements. Tr. 299.

After remand, Thurman submitted additional evidence from Dr. Conshafter. Specifically, Thurman submitted an April 13, 2016 assessment wherein Dr. Conshafter opined that Thurman cannot lift more than 10 pounds, lift his arms above shoulder level, twist, bend, squat, or kneel. Tr. 481. He also opined that Thurman must avoid prolonged walking and standing. *Id.* Thurman also submitted a July 22, 2016 assessment wherein Dr. Conshafter opined that Thurman is very limited in his ability to lift, carry, push, pull, and bend and is moderately limited in his ability to walk, stand, and sit. Tr. 490. He again opined that Thurman cannot lift more than 10 pounds, lift his arms above shoulder level, twist, bend, squat, or kneel, and that he must avoid prolonged walking, sitting, and standing. *Id.*

The record lacks treatment records from Dr. Conshafter, despite evidence that Dr. Conshafter regularly examined Thurman and took notes at those appointments. Tr. 335-36, 349-51. Thurman testified that, aside from visits to the emergency room, Dr. Conshafter was his sole source of medical treatment. Tr. 350-51.

### B. Appeals Council's Remand Order

When the Appeals Council remands a case, the ALJ "shall take any action" that the Appeals Council orders and "may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. §§ 404.977(b), 416.1477(b). If the ALJ does not abide by the directives in an Appeals Council's order, remand is warranted. *Savino v. Astrue*, No. 07-CV-4233 (DLI), 2009 WL 2045397, at *9 (E.D.N.Y. July 8, 2009) (citing 20 C.F.R. § 404.977(b)) (other citations omitted); *see also* 20 C.F.R. § 416.1477(b).

6

Here, the Appeals Council ordered the ALJ to "[a]ttempt to obtain treatment records" from Dr. Conshafter on remand. Tr. 374. On May 4, 2016, the ALJ sent Dr. Conshafter a letter requesting that he provide all of Thurman's treatment records within ten days. Tr. 460-70. On September 7, 2016, Thurman's counsel wrote a letter to the ALJ indicating that, despite several requests, Dr. Conshafter did not provide the records and she asked that the ALJ subpoena them. Tr. 472. On September 12, 2016, the ALJ sent another letter to Dr. Conshafter asking him to provide Thurman's treatment records within ten days. Tr. 476-78. Based on the two letters the ALJ sent Dr. Conshafter, the Court finds that the ALJ did not violate the Appeals Council's directive to attempt to obtain his records.

### C. Duty to Develop the Record and Authority to Subpoena

Even though the ALJ technically complied with the Appeals Council's remand order, the Court finds that the ALJ nonetheless should have subpoenaed Dr. Conshafter's records. The ALJ has an affirmative duty to develop the administrative record due to the "non-adversarial nature of a benefits proceeding." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). Remand is warranted if the ALJ fails to fulfill her duty to develop the record. *Pratts*, 94 F.3d at 39. On the other hand, where there are no "obvious gaps" in the record and a "complete medical history" exists, the ALJ is not obligated to seek additional evidence. *Rosa*, 168 F.3d at 79 n.5.

To assist the ALJ in developing the record, the SSA's regulations authorize the ALJ to issue subpoenas for documents that are "material to an issue at the hearing" when "it is reasonably necessary for the full presentation of a case." 20 C.F.R. §§ 404.950(d), 416.1450(d). The Second Circuit has explained that "[t]he plain language of this section clearly places the decision to issue a subpoena within the sound discretion of the ALJ." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998). But this discretion is not unlimited, and the ALJ "cannot ignore essential available medical

7

evidence." *Outman v. Comm'r of Soc. Sec.*, No. 1:16-CV-00988 (MAT), 2018 WL 3688312, at *2 (W.D.N.Y. Aug. 2, 2018) (citations omitted). The ALJ commits "harmful error" when she fails to subpoena medical records that are "reasonably necessary" to the claimant's case. *Id.* (citations omitted); *see also Sweeney v. Colvin*, No. 3:13-CV-703 (JCH), 2015 WL 5684024, at *2 (D. Conn. Sept. 28, 2015) ("[T]o establish prejudice in an ALJ's failure to subpoena records generally, the plaintiff must show that the records in question would undermine the ALJ's decision.").

Here, the lack of treatment records from Dr. Conshafter created an obvious gap that the ALJ was obligated to develop. Instead, the ALJ used that gap to Thurman's detriment. She discounted Dr. Conshafter's 2016 opinions because they lacked "detailed explanations," "cited clinical findings," or "evidence to support the basis of such significant physical limitations" (Tr. 322)—all of which could presumably be found in the relevant treatment notes.[4] The ALJ specifically noted that Dr. Conshafter ignored requests to produce Thurman's records even though Thurman testified that Dr. Conshafter was "aware of the issue regarding his records" and that he "does make notes" at their appointments. Tr. 322-23.

Although the ALJ attempted to obtain Dr. Conshafter's treatment records via two letter requests, she should have subpoenaed those records because they were reasonably necessary to proper resolution of Thurman's case.[5] Most significantly, Dr. Conshafter opined that Thurman

---

[4] As a chiropractor, Dr. Conshafter is considered an "other source" and his opinion is not entitled to controlling weight. *See* S.S.R. 06-03p, 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006). Nonetheless, "other source" opinions are "important" and "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *Id.* at *3. An ALJ must weigh an "other source" opinion based on the factors set forth in the regulations, *see* 20 C.F.R. §§ 404.1527(c)(1)-(6), (f), 416.927(c)(1)-(6), (f), and should "explain the weight" given to that opinion "or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ]'s reasoning." S.S.R. 06-03p, 2006 WL 2329939, at *6.

[5] The Court recognizes that the ALJ must "make every reasonable effort" to develop a claimant's "complete medical history" for at least the 12 months before the month in which he applied for benefits. *See* 20 C.F.R. §§ 404.1512(b)(1), 416.912(b)(1). "Every reasonable effort" means that the ALJ will make an initial request for evidence from the medical source and, if the evidence is not received, will make one follow-up request within 10 to 20 calendar days after the initial request. *Id.* at §§ 404.1512(b)(1)(i), 416.912(b)(1)(i). Although the ALJ sent Dr. Conshafter an initial

8

could not engage in prolonged sitting, standing, and walking due to "moderate limitation" in those areas.[6] Tr. 299, 481, 490. This opinion, if credited, might preclude Thurman from performing even sedentary work and thus render him disabled. *See, e.g.*, *Knorr v. Colvin*, No. 6:15-cv-06702(MAT), 2016 WL 4746252, at *13 (W.D.N.Y. Sept. 13, 2016) (noting that moderate limitations in sitting, standing, and walking are "not necessarily consistent with a sedentary RFC"); *Seignious v. Colvin*, No. 6:15-CV-06065(MAT), 2016 WL 96219, at *3 (W.D.N.Y. Jan. 8, 2016) (noting that "courts have found that even 'moderate' limitations raise questions as to a claimant's ability to perform prolonged sitting or standing")

The SSA's regulations state that "[a]lthough a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a). As the Second Circuit has recognized, "the concept of sedentary work contemplates substantial sitting." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) (citation omitted); *see also* S.S.R. 96-9P, 1996 WL 374185, at *3 (S.S.A. July 2, 1996) (In a full range of sedentary work, "[s]itting would generally total about 6 hours of an 8-hour workday."). "Thus, the ability to sit for prolonged periods is an essential inquiry in determining whether a claimant has the residual functional capacity to perform sedentary work." *Seignious*, 2016 WL 96219, at *2 (quotation mark, alteration, and citations omitted). Although the "regulations do not mandate the presumption that all sedentary jobs . . . require the worker to sit without moving for six hours," *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004), Dr.

---

request and a follow-up request, the Court finds that she still should have issued a subpoena for the reasons explained in this decision.

[6] It is worth noting that another medical source, Dr. Brown, also opined that Thurman should avoid prolonged sitting. Tr. 303.

9

Conshafter also opined that Thurman could not engage in prolonged standing or walking.[7] Thus, it is unclear that Thurman's limitations would be ameliorated by alternating positions in accordance with the ALJ's RFC determination.[8]

Because reliance on Dr. Conshafter's opinion could have changed the outcome of this case, the Court finds that the ALJ should have subpoenaed Dr. Conshafter's records because they were reasonably necessary to the ALJ's determination. Accordingly, remand is required.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 13) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 14) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel,* 209 F.3d 117, 124 (2d Cir. 2000); 42 U.S.C. § 1383(c)(3). The Clerk of Court will enter judgment and close this case.

IT IS SO ORDERED.

Dated: October 11, 2018
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court

---

[7] Dr. Brown similarly opined that Thurman should avoid prolonged walking. *Id.*

[8] The ALJ found that Thurman could stand and walk for six hours in an eight-hour workday but must sit for five minutes after 30 minutes and can sit for six hours in an eight-hour workday but must stand for five minutes after one hour. Tr. 318.